IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAUL F. ROMAN-TRAVERZO,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, *Commissioner of Social Security*,

    Defendant.

Civil No. 12-1798 (BJM)

**OPINION AND ORDER**

Raul F. Roman-Traverzo challenges a final decision denying his application for Social Security disability benefits. The parties agreed to proceed before a magistrate judge. *See* Docket No. 7. Roman-Traverzo filed a memorandum of law (Docket No. 18, "Pl. Mem.") and the Commissioner opposed (Docket No. 19, "Def. Mem."). The Commissioner's decision is **affirmed.**

**STANDARD OF REVIEW**

The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y*, 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y*, 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the

Commissioner to consider in conjunction with the examining physician's reports. *Irizarry-Sánchez v. Comm'r*, 253 F. Supp. 2d 216, 219 (D.P.R. 2003).

A claimant is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y*, 690 F.2d 5, 6-7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to an impairment already determined to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. At step four, the Commissioner determines whether the impairment prevents the claimant from performing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final

step asks whether the claimant is able to perform other work available in the national economy in view of his residual functional capacity ("RFC"), as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

The burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See Bowen*, 482 U.S. at 146-47 n.5. At steps one through four, the claimant has the burden of proving that he cannot return to her former employment because of the alleged disability. *Santiago v. Sec'y*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Sec'y*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

Roman-Traverzo was born on May 5, 1955. Transcript (Tr.) 145. He has four or more years of college. Tr. 263. He held jobs as a warehouse manager, materials administrator, and a manager between 1995 and 2000. Tr. 259. He claims a disability onset date of February 1, 2004 and was insured through December 31, 2004. Tr. 34, 36. He applied for Social Security Disability Insurance Benefits on February 26, 2009. Tr. 34. His claim was denied on July 1, 2009 and again on reconsideration on September 23, 2009. Tr. 34. On October 26, 2009, he requested a hearing, and one was held on June 4, 2010 before Administrative Law Judge ("ALJ") Hortensia Haaverson. Tr. 34.

Roman-Traverzo waived his right to appear and testify at the hearing, but was represented by attorney Alberto Diaz. Tr. 34. On June 4, 2010, David Sypher, M.S. testified as a vocational expert ("VE") at the hearing. Tr. 46-59. The VE testified that

Roman-Traverzo's past job as a manager qualified under the Dictionary of Occupational Titles ("DOT") as sedentary-level work and his job as a warehouse manager qualified as light duty work. Tr. 49. The judge posed two hypotheticals with different exertional limitations to the VE. The exertional limitations in the first hypothetical were: six hours of sitting, at least two hours of standing or walking, frequent lifting of up to ten pounds, occasional lifting of twenty pounds, frequent balancing and stopping, and occasional climbing, kneeling, and crawling in an eight-hour workday. Tr. 49-50. Based on that hypothetical, the VE determined that Roman-Traverzo could return to his past work. Tr. 50. The exertional limitations in the second hypothetical were: less than two hours of sitting, less than two hours of standing and walking, occasional lifting of up to ten pounds, rare stooping, and no twisting, crouching, or climbing in an eight-hour workday. Tr. 51. Based on the second hypothetical, the VE determined that Roman-Traverzo could not return to his past work. Tr. 51. The ALJ reviewed the evidence *de novo*, concluded that Roman-Traverzo's exertional limitations aligned with the first hypothetical, and found that he could therefore return to his past work as essentially a Stock Supervisor. Tr. 40-41. On March 26, 2012, the Appeals Council denied Roman-Traverzo's request for review. Tr. 13-17.

Roman-Traverzo had three treating physicians from 2004 to 2009 when he filed for disability benefits. Dr. Juan M. Padilla was his neurosurgeon. Tr. 283. Dr. Padilla first treated Roman-Traverzo on May 30, 2002 after Roman-Traverzo took a fall. Tr. 293. A follow-up appointment was scheduled, although there is no evidence that it took place. Tr. 295. In 2004, Dr. Padilla ordered three MRIs on August 17, September 8, and October 5. Tr. 288-89, 291, 382. In the MRIs he found various back injuries including bulging discs, decreased height of the visualized thorac-lumbar vertebral bodies, degenerative vertebral end plate change, early facet arthrosis, and more. Tr. 288-89, 291. Also included in the record are Dr. Padilla's progress notes from 2004 and 2005 that are illegible, see Tr. 283-287, and a number of prescription slips also from 2004 and 2005. Tr. 369-71, 375-76,

379-91. Other prescription slips submitted are undated. Tr. 366-68. Dr. Padilla submitted no report accompanying these documents.

Dr. Aurelio Collado Veléz was Roman-Traverzo's general practitioner. According to his report, he treated Roman-Traverzo monthly beginning September 4, 2004. Tr. 296. Dr. Collado reported that Roman-Traverzo experienced severe back pain all the time. Tr. 296. He reported that he could sit and stand for only ten minutes at one time, and that he could sit and stand or walk for about two hours in an eight-hour work day. Tr. 298. He also reported that Roman-Traverzo did not need a job that permitted shifting positions at will from sitting, standing, and walking, that his concentration and attention were never impacted by his impairment, and he would never have to miss work due to his impairment. Tr. 297-99. He found that Roman-Traverzo could never lift even less that ten pounds, he could never twist, and he was "totally disabled." Tr. 299-300. The progress notes included with his report stretch from 2003 to 2010, despite the fact that his report shows Roman-Traverzo's first visit occurring in 2004. Tr. 385-396. His progress notes were illegible to the translator, and upon review, to me as well. Tr. 126, 129, 132, 135, 139, 141.

Dr. Raul V. Marco was Roman-Traverzo's neurologist during this time period. He reported that Roman-Traverzo experienced moderate severe pain and that this pain frequently interfered with his attention and concentration. Tr. 301-02. In addition, he reported that Roman-Traverzo could not sit or stand for more than ten minutes at any one time and that he could only sit, stand or walk for less than two hours in an eight-hour period. Tr. 303. He reported that he could occasionally lift less than or ten pounds, that he could never twist, crouch, or climb ladders or stairs, and that he could stoop only rarely. Tr. 304. Dr. Marco also performed the following tests: a bone densitometry report, a lower extremity venous vascular study, a lower extremity arterial plethysmography, and a lower extremity arterial study. Tr. 362, 399-403. The bone densitometry report is

accompanied by notes that report "sagging" on both legs and that the patient gets up using arms and hands. Tr. 98.

The Social Security Administration requested a consultative examination from Dr. Samuel Mendez Figueroa, which was completed on May 29, 2009. Tr. 306. Based on Dr. Mendez's findings, DDS expert Dr. Florentino Figueroa rendered his opinion of Roman-Traverzo's residual functional capacity ("RFC"). He found that Roman-Traverzo could occasionally lift twenty pounds, he could frequently lift ten pounds, he could stand or walk for at least two hours in an eight-hour workday, and he could sit for about six hours in an eight-hour workday. Tr. 322. In addition, he found that he could balance and stoop frequently and that he could climb stairs or ladders, crouch, and crawl only occasionally. Tr. 323. The ALJ's first hypothetical to the VE used this RFC and the VE found that Roman-Traverzo could perform his past work based on the exertional limitations described. Tr. 50.

## DISCUSSION

Roman-Traverzo argues that the ALJ erroneously disregarded evidence in deciding that he could still perform his past work. He generally argues that the ALJ failed to give controlling weight to his treating physicians' opinions and did not adequately explain why they were not accorded more weight. Pl. Mem. at 2–3. More pointedly, he also argues that because the ALJ found their records sparse and notes illegible, she had an obligation to re-contact them and develop the record. *Id.* at 12–13.

I first address the ALJ's duty to supplement the record, then turn to her consideration of each treating source's opinion.

## I.    Follow-Up Obligation

Roman-Traverzo contends that the ALJ had to follow up with his treating sources first before discounting their opinions for lack of supporting evidence. Pl. Mem. at 13. Even though claimants bear the burden of persuasion at step four, the Commissioner still has a duty to develop an adequate record on which reasonable conclusions may be based.

*See Carrillo Marin v. Sec'y*, 758 F.2d 14, 17 (1st Cir. 1985).  Specifically, the regulations in effect when this case was decided provided that:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled . . . [w]e will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . .

20 C.F.R. § 404.1512(e)(1) (Westlaw 2011).[1]  But to prevail on failure-to-recontact grounds, a claimant must make a showing of unfairness or prejudice—specifically, that there was some evidence that, if considered, could have altered the ALJ's conclusions. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *Cox v. Astrue*, Civ. A. No. 08-10400-DPW, 2009 WL 189958 at *8 (D. Mass. Jan. 16, 2009) (citing *Newton* and *Shannon*).

Roman-Traverzo has not shown prejudice here.  His memorandum summarizes the ALJ's opinion and factual conclusions, but sheds little light on what additional information might have been considered had the ALJ reached out to his treating sources.  And cutting against any shadow of a doubt, the ALJ expressly noted Roman-Traverzo's "outright refusal to submit evidence" from his sources despite her "repeated requests" that he do so.  Tr. 40.  This likely refers to two letters from Roman-Traverzo's law firm's secretary, dated August 14 and October 26, 2009, stating that:

> We are not submitting the forms SSA-3441 and SSA-827 since the "Date Last Insured" on this case = December 31, 2004.
>
> We understand that under these circumstances, *the development of medical evidence is totally unnecessary at this time.*

---

[1] The Social Security Administration has since removed this provision from its regulations.  *See* 77 FR 10651 (Feb. 23, 2012) (amending 20 C.F.R. § 404.1512).

Tr. 93–94 (emphasis altered).[2]  *See also* Tr. 269–282 (noting Roman-Traverzo's refusal to submit SSA-3441 forms).  Having taken this position at the ALJ stage, Roman-Traverzo cannot now complain that the ALJ improperly closed the record on his treating sources.  *Cf. Cox*, 2009 WL 189958, at *7 (duty to recontact not triggered where ALJ identified a gap in the record and requested submissions from the claimant, and claimaint provided additional evidence).  *See also Shaw v. Sec'y*, No. 93-2173, 25 F.3d 1037 (table), 1994 WL 251000 (1st Cir. June 9, 1994) (unpublished, per curiam) (rejecting recontact argument for lack of prejudice where claimant was "afforded ample opportunity to present her case, and did not indicate any desire to offer further evidence.  After the ALJ's decision, she was afforded a further opportunity to present additional or clarifying evidence to the appeals council, but chose not to.").

As will be discussed below, the ALJ's assessment of treating source opinions hinges largely on the existence of gaps in, and inconsistencies with, the underlying medical evidence.  While the ALJ was obligated under the past regulations to seek additional information from them, Roman-Traverzo has not demonstrated the requisite prejudice from any failure in this regard—indeed, his own position was that no further medical evidence needed to be developed at all.  Because Roman-Traverzo has not established that the ALJ's error was prejudicial, he is not entitled to remand on this ground.

## II.    Weighing Treating Source Opinions

Roman-Traverzo challenges the ALJ's consideration of three treating sources:  Dr. Collado, Dr. Marco, and Dr. Padilla.  The Commissioner gives treating physicians' opinions controlling weight if they are "well-supported by medically acceptable clinical

---

[2] Form SSA-827 is a broad authorization for the disclosure of information to the SSA, including medical information.  *See* Form SSA-827, *available at* http://www.ssa.gov/online/ssa-827.pdf.  Form SSA-3441 is a questionnaire titled "Disability Report — Appeal."  *See* Form SSA-3441, *available at* http://www.ssa.gov/online/ssa-3441.pdf.

and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). When the Commissioner decides not to give controlling weight to a treating-source opinion, the decision must provide good reasons for doing so. *Id.* Once the ALJ determines that a treating physician's opinion is not controlling, she must determine the weight that the opinions do receive in light of a number of factors. 20 C.F.R. § 404.1527(c). Yet detailed analysis of each factor is not strictly necessary; so long as the ALJ's decision and reasoning are clear and supported by substantial evidence, it is wasteful to remand simply "so that another hearing officer may arrive at the same decision with more clarity." *Green v. Astrue*, 588 F. Supp. 2d 147, 155 (D. Mass. 2008).

### A.     Dr. Collado

The ALJ did not give Dr. Collado's opinion controlling weight because it was "plagued with inconsistencies." Tr. 38-39. This conclusion is supported by the evidence. For instance, Dr. Collado's report states that Roman-Traverzo complains of severe pain, *see* Tr. 296, but nonetheless states that he will never be absent from work on account of his impairment. Tr. 299. In addition, the report states that Roman-Traverzo suffers from depression, somatoform disorder, psychological factors affecting physical condition, anxiety, personality disorder, and has a marking for "other" that was then left blank. Tr. 297. On balance, the ALJ's decision not to give Dr. Collado's opinion controlling weight is sufficiently supported by the evidence. The ALJ's opinion adequately discusses the supportability and consistency problems with Dr. Collado's opinion, satisfying the obligation to provide good reasons for disregarding it. *See* 20 C.F.R. § 404.1527(c)(3)–(4).

### B.     Dr. Marco

The ALJ did not give Dr. Marco's opinion controlling weight because Roman-Traverzo only saw Dr. Marco sporadically. Tr. 38-39. The medical evidence of Dr. Marco's treatment consists of notes from an October 11, 2004 visit, an October 22 bone

densitometry report, and three studies of the lower extremities dated February 06, 2009. Tr. 362-364, 399-403.  Dr. Marco's opinion did not state how frequent Roman-Traverzo's visits were.  *See* Tr. 301.  The apparent lack of medical evidence regarding Dr. Marco's course of treatment permits a conclusion that the opinion was not based on a sufficiently close or longitudinal treatment relationship.  *See* 20 C.F.R. § 404.1527(c)(2).

Even if the infrequency of treatment alone were not enough to discount Dr. Marco's opinion, the ALJ also noted that Dr. Marco made no effort to correlate Roman-Traverzo's MRIs to any of his physical findings.  Tr. 38.  Dr. Marco reported reduced range of motion, abnormal gait, reflex changes, tenderness, swelling, muscle spasm, muscle weakness, weight change, and impaired sleep. Tr. 302. The report further states that Roman-Traverzo can raise his left and right legs only sixty degrees.  *Id*.  But the bone densitometry and lower extremity tests do not report specific exertional limitations, *see* Tr. 362, 399–403, and Dr. Marco's progress notes only report "sagging" on both legs and that Roman-Traverzo uses his arms and hands to get up. Tr. 98.  Dr. Marco's opinion is "brief and unsupported by clinical findings," and the Commissioner permissibly refused to give it controlling weight. *See Rodriguez v. Sec'y*, 46 F.3d 1114, No. 94-1868,  1995 WL 45781 at *4 (1st Cir. Feb. 7, 1995) (internal citations omitted).  The ALJ's discussion adequately identified problems with Dr. Collado's opinion and discharged the Commissioner's obligation to explain why it was disregarded.  *See* 20 C.F.R. § 404.1527(c)(3)–(4).

### C.   Dr. Padilla

The ALJ did not find Dr. Padilla's report controlling largely because his progress notes were "quite illegible and cryptic," "skimpy," and did not (legibly) convey specifics about any treatment or its outcome.  Tr. 38–39.  Dr. Padilla's progress notes were only accompanied by an initial consultation report from May 30, 2002, Tr. 293-95, and MRI reports from September and October 2004, Tr. 289–291.  The ALJ observed that the initial consultation report from 2002 showed that Roman-Traverzo did not need assistive

devices, had a normal gait, and could rise from a sitting position without difficulty, *see* Tr. 295, and thus "yield[ed] few findings in support of the alleged severity." Tr. 37.  In addition, the ALJ found that the MRI reports themselves made no specific references to exertional limitations.  Tr. 38.  On these terms, the ALJ permissibly found the opinion to be unsupported and inconsistent with the medical evidence.  *See* 20 C.F.R. § 404.1527(c)(3)–(4).

**III.  Summary**

The ALJ permissibly gave no weight to Roman-Traverzo's treating sources, and Roman-Traverzo failed to explain how recontacting those sources would alter the outcome; indeed, he resisted the ALJ's requests to develop the medical record.  Because he has not shown how the Commissioner's decision was contrary to law or not supported by substantial evidence, his appeal fails.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 23rd day of July, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge